FILED IN MY OFFICE
DISTRICT COURT CLERK
1/26/2018 10:32:55 PM
PHILLIP ROMERO
AY

THIRTEENTH JUDICIAL DISTRICT COURT
COUNTY OF VALENCIA
STATE OF NEW MEXICO

FRANCISCO AGUSTIN CARRILLO-ORTIZ,

        Plaintiff,

vs.                                                                                     No. D-1314-CV-2018-00095

NEW MEXICO STATE POLICE,
RAFAEL GOMEZ, in an individual capacity,
TOBY LAFAVE, in an individual capacity,
HUGO MUNOZ, in an individual capacity,
BRYAN WALLER, in an individual capacity,
JONATHAN TENORIO, in an individual capacity, and
JOSH WILLIS, in an individual capacity,
LORENZO AGUIRRE, in an individual capacity,
JOHN DOES, in an individual capacity.

        Defendant.

## COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND NEGLIGENCE RESULTING IN BATTERY

### I. JURISDICTION, VENUE AND PARTIES

1. Jurisdiction and venue are proper.

2. Mr. Carrillo-Ortiz was a residence of Valencia County, State of New Mexico at the time of the allegations in this Complaint.

3. The allegations in this complaint take place in Valencia County, State of New Mexico.

4. The New Mexico State Police is a governmental agency that oversees law enforcement throughout the State of New Mexico.

5. At all times material to this complaint, Defendants Rafael Gomez, Toby LaFave, Hugo Munoz, Bryan Waller, Jonathan Tenorio, Lorenzo Aguirre and Josh Willis were commissioned officers employed by the New Mexico State Police.



EXHIBIT A

6. Defendants John Doe were commissioned officers who supervised the Defendants at the New Mexico State Police.

## II. MATERIAL BACKGROUND FACTS

7. On July 29, 2015, Officer Toby LaFave with the New Mexico State Police (NMSP) conducted surveillance on the property where Mr. Carrillo-Ortiz resided with his mother.

8. Defendant LaFave did not have a search warrant to serve.

9. Defendant LaFave's was parked in the back of the residence as he believed that a stolen truck was in the backyard of the property.

10. Defendant LaFave waited until Mr. Carrillo-Ortiz exited the back door of the property to begin questioning the Plaintiff.

11. Defendant LaFave then entered the property without consent and attempted to arrest Mr. Carrillo-Ortiz without justification, without an arrest warrant and without a search warrant.

12. In review of Defendant LaFave's audio and video of that attempted arrest, the audio is intentionally muffled and the video is placed where only shadows of Mr. Carrillo-Ortiz and Defendant Lafave are visible.

13. Mr. Carrillo-Ortiz questions Defendant LaFave regarding his trespass of his property.

14. Another officer arrives to assist Defendant LaFave.

15. Defendant LaFave then attempts to taser Mr. Carrillo-Ortiz because Mr. Carrillo-Ortiz threatens to record this unlawful arrest.

16. During the attempted tasering of the Plaintiff, Mr. Carrillo-Ortiz managed to pull the taser from Defendant LaFave that resulted in Defendant LaFave being tazed in his genital area.

17. Mr. Carrillo-Ortiz runs from the scene but hears Office LaFave screaming and crying as a result of the tazer.

18. Mr. Carrillo-Ortiz was charged with Receiving and or Transferring a Stolen Vehicle and two counts of Resisting, Evading and Obstructing an officer on July 7, 2015.

19. Mr. Carrillo-Ortiz did not receive notice of the arraignment and a bench warrant was issued shortly thereafter.

### III. MATERIAL FACTS

20. Defendant Agent Rafael Gomez of the New Mexico State Police Criminal Investigation Section/Albuquerque and Defendant Sergeant Lorenzo Aguirre are part of the NMSP Tactical Team.

21. On January 28, 2016, Defendant Gomez and Defendant Aguirre met to plan an operation with the purpose of serving a felony warrant upon Mr. Carrillo-Ortiz for a one count fourth degree felony and two misdemeanors.

22. Defendants John Doe are commissioned officers in a supervisory position of the Defendants.

23. This NMSP Tactical Team consisted of Defendants Hugo Munoz, Bryan Waller, Jonathan Tenorio and Josh Willis.

24. These Defendants dressed ready for a war to be conducted in Valencia County.

25. The Defendants dressed in fatigues, their protection vests and armed with weapons as they posed for photographs prior to this ambush on Mr. Carrillo-Ortiz.

26. Some of the fatigues had "police" written on the back in small letters.

27. The leaders of this ambush also requested helicopter assistance for the apprehension Mr. Carrillo-Ortiz for a bench warrant issued for a fourth degree felony case and misdemeanors.

28. The Tactical Team allegedly devised a vehicle containment plan to arrest Mr. Carrillo-Ortiz which included vehicle blocking maneuver with a vehicle assault.

29. Defendant Gomez intentionally passed the Plaintiff's residence and noticed three vehicles, a white Chrysler PT Cruiser, White Dodge Magnum and a Green Chevrolet passenger truck.

30. This tactical war team had an unmarked white passenger van containing four members of the team and another unmarked gray Dodge passenger van containing two more members.

31. This tactical war team decided to conduct this arrest in front of the Manna Mini Mart located in El Cerro Mission area of Valencia County.

32. The Manna Mini Mart has various customers that frequent their store that include the elderly, women and children.

33. The Manna Mini Mart is also located near many residential homes.

34. El Cerro Mission is an area with a high rate of crime.

35. Mr. Carrillo-Ortiz arrived, unarmed and parked in front of the Manna Mini Mart.

36. Mr. Carrillo-Ortiz was unaware of the violence that he was about to be involved at the hands of law enforcement, the NMSP.

37. The unmarked white Dodge van moved to block Plaintiff's vehicle but was unable to park directly behind Mr. Carrillo-Ortiz and instead parked at a slight angle behind Plaintiff's vehicle.

38. One of the four officers/soldiers in the Dodge van deployed a flash-noise diversionary devise on top of the Plaintiff's vehicle before the unmarked gray passenger van was in place.

39. Upon information and belief, the four Defendants Munoz, Waller, Willis and Tenorio exited the unmarked white van with their weapons drawn after the flash-noise device was detonated.

40. Mr. Carrillo-Ortiz, fearing for his life, attempted to leave the parking lot and reversed his vehicle.

41. Mr. Carrillo-Ortiz was unaware that the NMSP was conducting this operation.

42. When Mr. Carrillo-Ortiz reversed his vehicle, the four Defendants opened fire upon the vehicle.

43. The four Defendant's shot 17 bullets into the Plaintiff's vehicle at close range.

44. Mr. Carrillo-Ortiz knew was going to die during the shooting.

45. Mr. Carrillo-Ortiz continued to drive away from the scene.

46. Mr. Carrillo-Ortiz drove away to locate a safe place.

47. Mr. Carrillo-Ortiz was in shock as he was bleeding from the numerous gunshot wounds to his body.

48. Mr. Carrillo-Ortiz called his mother, Griselda Ortiz-Marquez and stated he was shot by unknown individuals and that he was dying.

49. Mr. Carrillo-Ortiz's mother began looking for her son and found him laying down on a road with multiple gunshot wounds and visible bleeding.

50. Ms. Ortiz-Marquez called the police and reported that he was shot and requested assistance.

51. Mr. Carrillo-Ortiz was shot nine times; one bullet in the shoulder, one bullet in the back, three bullets in his stomach, one bullet in his foot and two bullets in his legs.

52. The emergency vehicles and NMSP officer John Cunningham arrived and provided Mr. Carrillo-Ortiz with assistance.

53. There were many people at the Manna Mini Mart who were present during this unlawful operation who experienced anxiety and fear because of this ambush.

54. A nearby resident escaped harm when a bullet came through her living room during this ambush by the NMSP.

55. Mr. Carrillo-Ortiz continues to live with scars from the removal of two bullets and still has seven bullets remaining in his body.

56. Mr. Carrillo-Ortiz has anxiety and fears law enforcement after this horrific incident.

57. Mr. Carrillo-Ortiz was subsequently charged with four counts of aggravated battery upon a peace officer and aggravated fleeing of a police officer. This criminal case is still pending.

### DEPRAVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND NEGLIGENT BATTERY

All previous paragraphs are incorporated herein by reference.

58. Defendant LaFave and Agent Rafael Gomez intended to pay back Mr. Carrillo-Ortiz for the previous interaction between the Plaintiff and Defendant LaFave that occurred on July 7, 2015.

59. This mentality of ganging up to protect each other within the NMSP must be acceptable and part of the culture at the NMSP in order for this incident to have occurred.

60. The NMSP used significant resources and tax payer money to organize an ambush of the Plaintiff which included the use of a helicopter.

61. The NMSP supervisors failed to properly supervise this tactical operation that result in the serious injuries to the Plaintiff and endangered innocent people in the area.

62. The Defendants failed to follow policy and procedure while executing this operation.

63. Defendant NMSP failed to properly train their commissioned officers in tactical operations that do not endanger suspects and the public.

64. The actions by the Defendants resulted in serious injuries to Mr. Carrillo-Ortiz.

65. These actions are unlawful and a violation of a basic human right from violence and unlawful seizure, and excessive force by a state agency.

66. The actions by these Defendants are a violation of an individual's civil rights pursuant to 42 U.S.C. § 1983.

67. These Defendant's committed a negligent battery upon Mr. Carrillo-Ortiz that resulted in significant injuries.

68. Defendant's used a degree of force that was unnecessary and unlawful.

69. The Defendants have caused Plaintiff damages.

70. The Defendants acted willfully and with conscious disregard to Plaintiff's basic rights.

71. The conduct of the Defendants constitutes negligence within the meaning of Section 41-4-12 of the New Mexico Tort Claims Act.

WHEREFORE, the Plaintiff prays for the following relief;

1. Actual and compensatory damages sufficient to address the damages suffered by Mr. Carrillo-Ortiz.

2. Attorneys' fees, litigation expenses, costs, pre-and post-judgment interest as provided by law; and

3. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

By_____/s/Jane Rocha de Gandara
Jane Rocha de Gandara
Attorney for Plaintiff
505 Main St. SW
Los Lunas, N.M. 87031
(505) 865-0688