IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANCISCO AGUSTIN
CARRILLO-ORTIZ,

                Plaintiff,

vs.

                             Case No:  18-CV-334-NF-KHR

NEW MEXICO STATE POLICE, et al.,

                Defendants.

---

## ORDER ON MOTION TO DISMISS AND TO SHOW CAUSE

This matter is before the Court on the Motion to Dismiss Plaintiff Francisco Agustin Carrillo-Ortiz's Second Amended Complaint. (Doc. 58).  All named Defendants except Defendants Luis Hernandez and Shane Todd join in the motion; Defendants Hernandez and Todd are not yet served and have not appeared.  In resolving the Motion, the Court does not consider the claims against Defendants Hernandez and Todd.   For the following reasons, the Court concludes the only claims that survive the motion are Plaintiff's Fourteenth Amendment and battery claims against Defendants Munoz and Waller.  The Court also requires Plaintiff to show cause within 14 days why the unserved Defendants Hernandez and Todd should not be dismissed for lack of timely service.

## BACKGROUND[1]

This suit stems from Plaintiff Francisco Agustin Carrillo-Ortiz's interactions with New Mexico State Police ("NMSP") in 2015 and 2016. On July 29, 2015, NMSP Officer

---

[1] These allegations are taken from Plaintiff's Second Amended Complaint, the "SAC."  Doc. 57.

Toby LaFave conducted surveillance "on the property where Mr. Carrillo-Ortiz resided with his mother." As Carrillo-Ortiz exited his mother's back door, LaFave entered the property without consent or a warrant and attempted to arrest him without justification. LaFave attempted to taser Carrillo-Ortiz for threatening to record the unlawful arrest, but an assisting officer accidently tased LaFave. Because of this encounter, Carrillo-Ortiz was charged with receiving and or transferring a stolen vehicle and two counts of resisting arrest. Carrillo-Ortiz did not receive notice of the arraignment, and a court issued a bench warrant shortly thereafter.

Following the 2015 encounter, LaFave "conspired with Defendant Rafael Gomez and possibly other Defendants to retaliate against [Carrillo-Ortiz.]" While the complaint is somewhat unclear, communications between these defendants apparently led to an "operation" to apprehend Carrillo-Ortiz on the pending arrest warrant. Carrillo-Ortiz was also a suspected drug dealer. On January 28, 2016, a "tactical team" composed of NMSP Officer Defendants Lorenzo Aguirre, Hugo Munoz, Bryan Waller, Jonathan Tenorio, Shane Todd, and Josh Willis met "to plan and execute a control narcotic buy between [Carrillo-Ortiz and] a confidential informant." The tactical team believed this operation would "result in the arrest of [Carrillo-Ortiz]" or give them an opportunity to "execute a non-violent felony arrest warrant." Defendant Luis Hernandez "approved [a] tactical team and aircraft involvement" to carry out this operation. Hernandez "was the supervisor of the Special Operations Bureau that [oversaw] the NMSP Tactical Team and Aircraft Section" during the relevant time period.

On January 28, 2016, defendants worked to bring the operation to fruition. Defendants initially tried to entrap Carrillo-Ortiz at a gas station "for the control buy." The Defendants even "requested that the Aircraft Section of the Special Operations Bureau assist . . . by providing a helicopter for surveillance." However, Defendants were unable to carry out their plan at the gas station, and they moved their activities to another spot: the Manna Mini Mart. When Defendants arrived at the Mini Mart, Carrillo-Ortiz was "alone in his vehicle and unarmed," parallel parking the vehicle to pick up a friend. While he was watching his friend approach, Carrillo-Ortiz felt a sharp pain and realized he had been shot several times. He "did not see law enforcement or the vehicles that law enforcement [officers were] driving." Carrillo-Ortiz left by reversing his vehicle and driving away. He drove "a short distance away" before calling his mother, Griselda Ortiz-Marquez. Ms. Ortiz-Marquez "began looking for her son and found him laying down on a road with multiple gunshot wounds and visible bleeding." She "called the police and reported that he was shot and requested assistance." When law enforcement arrived, they "arrested" and "detained" Carrillo-Ortiz, eventually transferring him to "UNM hospital because of the severity of his injuries." SAC ¶ 20.

Plaintiff further alleges

> On a voice recording obtained from Defendant Tenorio, a Defendant's voice states "State Police … let me see your hands" and within two seconds of the announcement to the Plaintiff approximately seventeen shots are fired in close proximity at Plaintiff's vehicle in a matter of thirteen seconds. Upon information and belief, seconds prior to the gunshots, one of the four officers in the Dodge van deployed a flash-noise diversionary devise [sic] on top of the Plaintiff's vehicle before the unmarked gray passenger van was in place.

SAC ¶ 22.

Based on these allegations, Carrillo-Ortiz brought suit through his counsel, initially alleging violations of his civil rights and negligent battery against Defendant New Mexico Department of Public Safety and several individual defendants in their individual and official capacities. Doc. 1-1 (state court complaint removed to this Court). On Defendants' motion, the Court dismissed the initial complaint for Plaintiff's failure to identify among other things what constitutional rights he claimed Defendants violated and to plausibly allege facts to support a "negligent battery" claim exempt from New Mexico's immunity. Doc. 35 (order of October 9, 2018). The Court gave leave to amend. In the first amended complaint ("FAC"), Carrillo-Ortiz maintained his civil rights claim and clarified his state law claim was for battery, rather than negligent battery. But the FAC still did not identify what constitutional rights were at issue or what facts supported each claim as to each Defendant. The Court dismissed the FAC for failure to state a claim and gave leave to amend again. Doc. 55 (Order of April 4, 2019).

In the SAC, Carrillo-Ortiz states one cause of action for a § 1983 conspiracy and failure to train and supervise. SAC, pp. 8-12. He states another single cause of action for excessive force and unreasonable seizure under the Fourth and Fourteenth Amendments, and battery. *Id.,* pp. 12-14. On May 31, 2019, Defendants moved to dismiss the SAC. Doc. 58. The motion is fully briefed and ready for disposition.

## STANDARD OF REVIEW

In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, a court "must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155,

1161 (10th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

But "dismissal is appropriate where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Al–Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Where litigants sue government officials in their individual capacities under § 1983, those officials may assert qualified immunity. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Elder v. Holloway*, 510 U.S. 510, 512 (1994)). Thus, to survive a motion to dismiss based on qualified immunity,

plaintiffs must allege facts showing: 1) that "defendants plausibly violated their constitutional rights," and 2) "that those rights were clearly established at the time." *Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir. 2008).

"For the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents,* 852 F.3d 973, 981 (10th Cir. 2017). Further, since "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants … [t]he *Twombly* standard may have greater bite in such contexts." *Robbins*, 519 F.3d at 1249.

## DISCUSSION

### I.      *Fourth Amendment Claim*

Carrillo-Ortiz claims excessive force and unreasonable seizure under the Fourth Amendment. It appears he states this claim against only the three individual Defendants mentioned in this claim: Munoz, Waller, and Todd.[2]  The SAC does not make plain whether Plaintiff brings this claim against these officers in their official or personal capacities. To the extent Plaintiff seeks damages on this claim against the three officers in their *official* capacity, the claim fails because they are not "persons" suable under § 1983 for such relief. "[N]either a State nor its officials acting in their official capacities are 'persons' under §

---

[2] This is true regardless that Defendants waived Eleventh Amendment immunity by removing the case. *See, e.g., Martinez as Next Friend of Martinez v. Crespin,* No. CIV 00-6 MV/WWD, 2000 WL 36739832, at *2 (D.N.M. June 1, 2000). Because Defendant Todd has not yet been served, the Court limits its discussion of this claim to Defendants Waller and Munoz.

1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, "§ 1983 creates no remedy against a State." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997). Therefore, as to damages, the claim can only regard the three officers in their personal capacity.

As to Plaintiff's request for injunctive relief, Plaintiff's allegations do not establish standing for injunctive relief on this claim. Plaintiff's allegations must demonstrate a realistic probability that he will again be subjected to the same injurious conduct. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983) (cited with approval in *e.g., Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)). In this case, Plaintiff's allegations do not suggest any likelihood, let alone realistic probability, that he will be subjected to the same conduct from NMSP again.

To the extent Plaintiff intends this claim against more of the individual Defendants, the claim fails because individual liability under § 1983 "requires personal involvement" in the alleged constitutional violation. Therefore the Court would have no means to hold any of the other individual defendants liable for this claim. *Pahls v. Thomas*, 718 F.3d 1210, 1231 (10th Cir. 2013). Accordingly, the Court will proceed under the assumption that Carrillo-Ortiz pled this claim against Defendants Munoz and Waller in their individual capacities.

Defendants Munoz and Waller argue the Court should dismiss this claim because their actions did not give rise to a Fourth Amendment violation. Further, even if the Court concludes that these Defendants violated Carrillo-Ortiz's Fourth Amendment rights,

Munoz and Waller claim they are entitled to qualified immunity on this claim because they did not violate a clearly established right.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. A claim for either excessive force or unreasonable search/seizure under the Fourth Amendment cannot exist without a search or seizure. In this case, Plaintiff alleges only a seizure, not a search. To allege a seizure, plaintiffs cannot merely point to "use of physical force or show of authority" by law enforcement defendants. *Brooks v. Gaenzle*, 614 F.3d 1213, 1222 (10th Cir. 2010). Rather, they must demonstrate that a defendant's actions "terminated" their "movement" or prompted their "submission" to law enforcement through means intentionally applied. *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 843–44 (1998) (citing *inter alia California v. Hodari D., 499 U.S. 621, 626 (1991)).

The Tenth Circuit fleshed out this need to prove termination in movement or submission to authorities in two recent cases. In *Farrell v. Montoya,* 878 F.3d 933 (10th Cir. 2017), Oriana Farrell brought suit under § 1983 after a New Mexico State Police officer fired shots in the direction of her moving vehicle in attempting to effect a traffic stop. *Id.* at 934. None of the shots made contact with Ms. Farrell's vehicle or slowed her movement. Police arrested her only after a four-minute high-speed car chase. Nonetheless, Ms. Farrell contended the officer violated her Fourth Amendment right against excessive force. Officer Montoya moved for summary judgment asserting qualified immunity, but the district court denied his motion. The Tenth Circuit reversed, reasoning Ms. Farrell had failed to satisfy the seizure requirement for a Fourth Amendment claim. The Tenth Circuit noted a seizure does not occur unless government actions terminate an individual's

movement or allow government to gain "physical control" over the individual. *Id.* at 937. Because "the Farrells were fleeing when [the defendant police officer] fired his gun at their vehicle," no seizure occurred at that time. Ms. Farrell was not the victim of a Fourth Amendment violation, and the defendant police officer was entitled to qualified immunity.

A year and a half after *Farrell*, the Tenth Circuit applied its holding from that case in *Torres v. Madrid*, 769 F. App'x 654 (10th Cir. 2019), *petition for cert. pending*. In that case, Roxanne Torres brought suit under § 1983 after police officers "shot in [the] direction" of her fleeing car after a failed attempt to execute an arrest warrant. Ms. Torres suffered two gunshot wounds because of the defendants' actions. The bullets did not halt Ms. Torres' movement; she proceeded to drive forward, "driving over a curb, through some landscaping, and onto a street" before eventually "colliding with another vehicle." *Id.* at 656. At that point, she stole another car and drove 75 miles where she sought medical care under a false name. Ultimately, Ms. Torres was airlifted to an Albuquerque hospital, and police arrested her there the following day. Like *Farrell*, Ms. Torres contended the officers' gunshots constituted excessive force in violation of the Fourth Amendment even though they did not terminate her movement. On summary judgment, the district court concluded the officers were entitled to qualified immunity on this claim, noting there was no seizure. Citing *Farrell*, the Tenth Circuit affirmed, noting that the officers' shots did not "stop [Ms. Torres] or otherwise [cause her to] submit to the officers' authority." Accordingly, the Court concluded that Torres was not the victim of a seizure, and her Fourth Amendment excessive force claim failed as a matter of law. *Id.* at 657.

Like *Farrell* and *Torres*, Carrillo-Ortiz claims he was the victim of a Fourth Amendment violation. Specifically, he alleges that Munoz, Waller, and Todd fired seventeen gunshots in his direction while he was waiting for his friend at the Mini Mart. According to Plaintiff, ten of the shots made contact with his body. He claims Munoz, Waller, and Todd are responsible for these shots because these defendants were missing bullets in their guns after the January 28, 2016 encounter. Carrillo-Ortiz alleges that upon realizing he was shot, he "backed up his vehicle to escape the onslaught of bullets coming his way." Mr. Carrillo-Ortiz "drove a short distance away" before calling his mother, indicating "he was shot by unknown individuals and that he was dying." Eventually, Carrillo-Ortiz's mother found her son and called police, reporting that he had suffered gunshot wounds and needed assistance. Only after his mother's call was Carrillo-Ortiz "arrested, detained and transferred to UNM hospital because of the severity of his injuries."

By Plaintiff's own allegations, the gunshots did not terminate Carrillo-Ortiz's movement, effect his submission to law enforcement authority, or establish physical control. In Plaintiff's response, he argues that "in the light more favorable to the plaintiff, [he] was seized at the time his body was lodged with 10 bullets. The shooting by the Defendants caused Defendant to stop his vehicle as he could no longer drive because of the injuries sustained by the Defendants." Doc. 63, p. 10. This argument either contradicts Plaintiff's above allegations or contradicts itself ("he could *no longer* drive," *i.e.,* he did drive away after being shot).

Plaintiff recognizes the standard for a seizure is termination of his movement through means intentionally applied, citing *inter alia County of Sacramento.* Plaintiff

attempts to distinguish his case from others alleging only shots fired in the plaintiff's direction or shots that hit the vehicle but not the plaintiff's body. Doc. 63, p. 10 (citing *inter alia Bella v. Chamberlain,* 24 F.3d 1251, 1256 (10th Cir. 1994), in which the officer's gunshot hit the plaintiff's helicopter but did not stop plaintiff's movement). But both the reasoning of *County of Sacramento* and its progeny, and *Torres* in particular, show that for purposes of the Fourth Amendment, the question is whether the shot stopped Plaintiff's movement, regardless whether it hit Plaintiff, only the car, or nothing at all. Under *Farrell* and *Torres*, there was no seizure during the Defendants' shooting at Plaintiff and his car. Accordingly, all Defendants whom Plaintiff sued for a Fourth Amendment violation are entitled to dismissal because Plaintiff cannot show a constitutional violation. The claim fails as a matter of law and is dismissed.

## II.     *Fourteenth Amendment Claim*

In the same cause of action as his Fourth Amendment claim, Plaintiff also cites a Fourteenth Amendment "right[] to be free of unreasonable seizure and excessive force." Doc. 57, p. 13. This claim appears directed toward only the same three officers, Defendants Munoz, Waller and Todd. SAC ¶¶ 44, 45, 47, 48, 50, 51. The Fourteenth Amendment contains multiple limits on States' conduct, but it does not expressly refer to unreasonable seizure or excessive force. Each of the Fourteenth Amendment clauses providing protection from State overreaching – *e.g.,* the privileges or immunities clause, due process, and equal protection – has developed separately in case law. Here, the closest Plaintiff comes to specifying the clause on which he relies is his allegation that: "Defendant's actions are a violation of a basic human right from violence, unlawful seizure, battery,

excessive force and/or deprivation of rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico." SAC ¶ 52.

Defendants recognize in their motion that Plaintiff pled the unreasonable seizure and excessive force claim under the Fourteenth Amendment. Doc. 58, pp. 3, 8. But Defendants Munoz and Waller do not address the legal standards for this claim in their motion or reply. Plaintiff likewise does not explicate his Fourteenth Amendment claim in the SAC or his response brief (despite citing a case that discusses such a claim, *County of Sacramento*, for his Fourth Amendment claim). The Court cannot act as an advocate for either side. As such, the Court considers the only argument Defendants Munoz and Waller raise in defense of *all* of Plaintiff's constitutional claims.

Defendants argue the fact allegations show they did not violate any constitutional rights because they acted reasonably at all times. They argue "the voice recording made prior to shots being fired … proves Defendants announced they were police officers and Plaintiff was ordered to show his hands." Defendants further argue "Plaintiff had a felony warrant and to a reasonable officer, Plaintiff appeared to be fleeing officers who were attempting to arrest him."

However, Plaintiff alleges (on information and belief) that "seconds prior to the gunshots," one of the Defendants (whom Plaintiff does not identify) "deployed a flash-noise diversionary devise [sic] on top of the Plaintiff's vehicle." He also alleges he did not know the police were there, before or after he drove away. On a Rule 12(b)(6) motion, the Court must take the fact allegations as true and give reasonable inferences in favor of Plaintiff. A reasonable inference from Plaintiff's allegations is that Defendants Waller and

12

Munoz knew or should have known Plaintiff did not hear the announcement that they were police and to show his hands. Plaintiff also alleges that before the gunshots, his car was in motion to parallel park. He alleges he reversed his car to leave only after the shots began. The officers may have had good reason to believe Plaintiff heard their announcement and was attempting to flee when they shot at him or his car, but the Court cannot resolve this fact question on a Rule 12 motion. In light of these allegations – and the Defendants' lack of reasoned argument for dismissing the Fourteenth Amendment claim – Defendants Munoz and Waller have not shown they are entitled to qualified immunity.

### III. *Conspiracy Claim*

Carrillo-Ortiz also attempts to bring a conspiracy claim. The SAC does not make clear whether Plaintiff intended to bring this claim under § 1983, state law or both. In his response, Plaintiff argues both § 1983 and state law. The claim fails under state law because all Defendants are immune from such a claim under the New Mexico Tort Claims Act. N.M. Stat. Ann. § 41-4-4(A); § 41-4-12 (exceptions to immunity for law enforcement officers do not include conspiracy). *See, e.g., Voiles v. New Mexico Dep't of Pub. Safety,* No. CIV. 14-428 JCH/KK, 2016 WL 10587964, at *4 (D.N.M. Mar. 30, 2016).

Section 1983 plaintiffs can bring claims for defendants' conspiracy to violate their constitutional rights. *Dixon v. Lawton*, 898 F.2d 1443, 1449, n.6 (10th Cir. 1990). However, as a § 1983 claim it is subject to the same limitations noted above: the Department of Public Safety/NMSP and the officers in their official capacity are not persons suable for damages under § 1983. For the same reasons noted above, the fact allegations also do not support standing to request injunctive relief. The § 1983 conspiracy

claim therefore can only be for damages against individual officers in their personal capacity.

For a § 1983 conspiracy claim, Plaintiff must plead an actual deprivation of constitutional right and a conspiracy. *Dixon*, 898 F.2d at 1449. Pleading a conspiracy requires alleging "specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

In this case, Carrillo-Ortiz asserts:

Defendant [sic] Lafave and Gomez discussed the interactions between Mr. Carrillo-Ortiz and Lafave prior to January 28, 2016. As a result of this interaction, Lafave and Gomez conspired to intimidate Mr. Carrillo-Ortiz by having Gomez bring significant department resources to arrest him as a showing of support for fellow officer Lafave as at the time they were both employed with N.M. Department of Public Safety and acting under a color of the state law in their actions and inactions.

SAC ¶ 31. Further, Plaintiff asserts that "Defendants Gomez, Munoz, Waller, Tenorio, Willis, Aguirre, Todd and approved by Hernandez jointly created a plan to use their vehicles to block in Mr. Carrillo-Ortiz." Outside of these allegations, Carrillo-Ortiz fails to allege any facts in support of a § 1983 conspiracy.

The Court concludes above that Plaintiff's Fourteenth Amendment claim for excessive force or unreasonable seizure against Defendants Munoz and Waller is the only constitutional claim that survives. The § 1983 conspiracy claim therefore fails as to all Defendants except perhaps Munoz and Waller because Plaintiff does not plead a deprivation of constitutional right.

In his Response, Plaintiff also argues the conspiracy claim is supported by malicious prosecution in the filing of two state criminal proceedings against him. "One element that

must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey,* 512 U.S. 477, 484 (1994) (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed. 1984)). Plaintiff alleges the first criminal proceeding was dismissed for failure of the State to provide discovery. But the only Defendant Plaintiff alleges was involved in instituting the first charges was Defendant LaFave. Plaintiff does not allege any other Defendants made an agreement with LaFave regarding those charges. Plaintiff also provides no reasoned argument for why a dismissal due to the State's failure to provide discovery should be considered termination in Plaintiff's favor for purposes of malicious prosecution. As to the second criminal charges, Plaintiff alleges the proceeding is still pending. Plaintiff cannot support his conspiracy claim by asserting malicious prosecution.

Moreover, even as to Waller and Munoz, Plaintiff alleges only an agreement for how to block Plaintiff's vehicle so he could not flee during arrest. "The bare assertion that certain officials 'conspired' is exactly the kind of conclusory statement we are not to consider when assessing a motion to dismiss." *Gowadia v. Stearns*, 596 F. App'x 667, 671 (10th Cir. 2014). This conduct is equally (or more) consistent with lawful planning of a controlled-buy and arrest on a pending arrest warrant. As such, the allegations fail to raise an inference of conspiracy. *See, e.g., Id.* at 672 (allegations that were equally or more likely explained by officers' legitimate purpose with respect to inmate did not raise an inference of conspiracy). Plaintiff's § 1983 conspiracy claim fails as a matter of law and is dismissed.

### IV.    Failure to Train and Supervise Claim Under § 1983

Carrillo-Ortiz also brings a claim for failure to supervise or train under § 1983.  He appears to direct this claim against Defendants NMSP, Hernandez and Gomez.  SAC ¶¶ 27, 36.  Defendant Hernandez has not been served and therefore did not join in the motion.

As noted above, to the extent Plaintiff seeks *damages* on this claim against Defendant NMSP and Defendant Gomez in his official capacity, the claim fails first and foremost because they are not "persons" suable for such under § 1983.  *Will*, 491 U.S. at 71.  Therefore only Defendant Gomez in his personal capacity is subject to this claim for damages.  Plaintiff also appears to seek injunctive relief on this claim against both NMSP and Defendant Gomez. But Plaintiff's allegations do not establish standing to bring a claim for injunctive relief on this claim: his allegations do not suggest any likelihood, let alone realistic probability, that he will be subjected to the same conduct from NMSP again.  *City of Los Angeles,* 461 U.S. at 105.

In short, the only part of Plaintiff's failure to train or supervise that could potentially form the basis for § 1983 liability is against Defendant Gomez (or Hernandez, if he were in the suit yet) in his personal capacity.  To state this claim, Plaintiff must allege facts supporting a claim that Gomez's subordinates violated the constitution and an 'affirmative link' between Gomez's failure to train or supervise and the violation.  The affirmative link "requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind." *Keith v. Koerner,* 843 F.3d 833, 838 (10th Cir. 2016).  "[A] supervisor's mere knowledge of his subordinate's" unconstitutional purpose or action is insufficient. *Iqbal,* 556 U.S. at 677.  "'[S]upervisory liability' is a misnomer. ... [E]ach Government

official, his or her title notwithstanding, is only liable for his or her own mis-conduct." *Id.*

Alleging a supervisor's knowledge and acquiescence in a subordinate's unconstitutional

conduct does not suffice to state a claim under § 1983. *Id.* The plaintiff must instead allege

the supervisor had the state of mind necessary to establish the type of § 1983 violation the

subordinates are alleged to have violated. *See Dodds v. Richardson,* 614 F.3d 1185, 1204

(citing *Iqbal,* 556 U.S. at 677).[3]

> In this case, Plaintiff alleges Defendant Gomez conspired with Defendant LaFave
>
> and possibly other Defendants to retaliate against the Plaintiff for the incident that occurred on July 7, 2015 between Defendant LaFave and the Plaintiff. They conspired to intimidate, scare, entrap, retaliate, harass and arrest the Plaintiff by using significant law enforcement resources in the form of personnel, vehicles, weapons and helicopter surveillance at the risk of many lives. This operation was not common practice within the department for an arrest warrant from a magistrate court nor for a narcotic operation to apprehend a suspected drug dealer. This operation was to apprehend Mr. Carrillo-Ortiz for non-violent felony warrant.

SAC ¶ 14. According to Plaintiff, Defendant Gomez "is an Agent with the New Mexico

State Police Criminal Investigations who organized th[e] operation" at the Mini Mart. *Id.*

¶ 16. Defendant Gomez allegedly discussed with Defendant LaFave using extensive

NMSP resources in the operation as a show of support for Defendant LaFave having been

tased in his first attempt to arrest Plaintiff (the "incident that occurred on July 7, 2015").

After that discussion, "Defendants Gomez, Munoz, Waller, Tenorio, Willis, Aguirre, Todd

and approved by Hernandez jointly created a plan to use their vehicles to block in Mr.

Carrillo-Ortiz" and "collaborated to set up this dangerous operation without properly

---

[3] The parties did not brief the legal standard of intent for Plaintiff's Fourteenth Amendment claim, and the Court declines to analyze that issue here because the failure to supervise or train claim fails on a different element, causation.

planning for contingencies." SAC ¶¶ 34-35. Plaintiff concludes: "Defendant Gomez and Defendant Hernandez failed to supervise, train and properly brief this operation that resulted in significant injuries to Mr. Carrillo-Ortiz." *Id.* ¶ 36.

The failure to train or supervise claim against Defendant Gomez fails because Plaintiff does not allege non-conclusory facts supporting causation. Plaintiff does not even allege Gomez had supervisory or training responsibility over the officers involved in the operation at the Mini Mart. He alleges Gomez is an agent in criminal investigations, not a supervisor of the tactical team. He alleges Gomez organized the operation but also says he only "jointly created" the plan by "collaborating" with the officers on the tactical team. Plaintiff's assertion that Gomez had supervisory or training authority over the officers who participated in the operation – *i.e.,* an affirmative link between a failure to train or supervise and the alleged constitutional violation – is conclusory.

Plaintiff's generic assertions regarding "NMSP law enforcement officers" and "the officials responsible" for assuring implementation of NMSP's policies do not help his claim against Gomez. These allegations are too generic and conclusory to support an inference that Defendant Gomez acted in the manner Plaintiff alleges other, unidentified NMSP officers have acted. In short, Carrillo-Ortiz's claim for failure to supervise or train against Defendant Gomez is dismissed.

## V. *Battery Claim*

Finally, Carrillo-Ortiz continues to plead a state-law battery claim. State officials are only subject to liability for certain torts enumerated in the New Mexico Tort Claims Act. N.M. Stat. Ann. § 41-4-12. One of those torts is battery. To demonstrate battery, a

litigant must prove that a defendant "act[ed] intending to cause a harmful or offensive contact with [a] person" or "imminent apprehension of such a contact," and "an offensive contact with the person of the other directly or indirectly results." *Bustos v. City of Clovis*, 365 P.3d 67, 80 (N.M. Ct. App. 2015) (quoting Restatement (2nd) of Torts § 18 (Am. Law. Inst. 1965)). A party acts "intentionally" for purposes of battery where they are "substantially certain" their actions would produce a certain result. *Garcia v. Gordon*, 98 P.3d 1044, 1046 (N.M. Ct. App. 2004)). Defendants also cite a requirement of acting in a "rude, insolent or angry manner," a requirement of the crime of battery. N.M. Stat. Ann. § 30-3-4 (defining a petty misdemeanor). In New Mexico law, "[t]he elements of civil and criminal assault and battery are essentially identical," and the tort is elementally based on the criminal offense definition. *Herrera v. Sena*, No. 1:18-CV-00763JHRKBM, 2019 WL 1922458, at *3 (D.N.M. Apr. 30, 2019) (citing *State v. Ortega*, 827 P.2d 152 (N.M. 1992)).

"New Mexico affords law enforcement officers making an arrest a privilege against assault and battery claims so long as they use only that force that is reasonably necessary." *Serrano v. United States*, 766 F. App'x 561, 570–71 (10th Cir. 2019) (affirming summary judgment to arresting officers on New Mexico battery claim under the Federal Tort Claims Act). *See also Peña v. Greffet,* 108 F. Supp. 3d 1030, 1062-63 (D.N.M. 2015) (noting an arresting officer can be liable for battery under New Mexico law to the extent he uses more force than he reasonably believes to be necessary to effect the arrest). "New Mexico courts generally submit issues surrounding the privilege to a jury, but the New Mexico Supreme Court also has recognized that judgment as a matter of law may be appropriate," such as

19

when reasonable minds cannot "differ under the circumstances as they appeared to the defendant at the time." *Serrano,* 766 F. App'x at 571.

In this case, Carrillo-Ortiz alleges he was the victim of ten gunshots fired collectively by Munoz, Waller, and Todd. Carrillo-Ortiz claims these Defendants shot him in an attempt to execute a non-violent felony arrest warrant, the shots came without any provocation from Carrillo-Ortiz, and while he was parallel parking *i.e.,* before he reversed his vehicle to leave. While Carrillo-Ortiz never explicitly suggests the defendants were substantially certain their gunshots would hit him, that seems to be the logical inference of his complaint. Indeed, he suggests the relevant defendants fired seventeen shots "in a close proximity" to his vehicle. Certainly, these defendants had to have been substantially certain their gunshots would hit Carrillo-Ortiz or come close to making contact with him. He asserts these officers used excessive force and that it was objectively unreasonable. In short, Plaintiff alleges Munoz and Waller did not reasonably believe the gunshots were necessary to effect Plaintiff's arrest. While a reasonable jury could disagree with Plaintiff, Plaintiff plausibly makes the claim. The Court cannot resolve the fact issues for this claim on a Rule 12 motion. For all these reasons, Carrillo-Ortiz' allegations, taken as true, are sufficient to state a battery claim against Munoz and Waller.

However, to the extent Carrillo-Ortiz attempts to plead this claim against any other Defendant, it fails. Carrillo-Ortiz never suggests any of the other Defendants shot him, made contact with him whatsoever, or caused imminent apprehension of such contact. The battery claim is dismissed except as to Defendants Waller and Munoz.

## VI.    Unserved Defendants Hernandez and Todd

Officer Hernandez was added as a defendant in the FAC filed October 26, 2018. Officer Todd was added in the SAC filed May 3, 2019. In his response brief, Plaintiff represented at that time (July 15, 2019) he "anticipate[d] that service will be completed before briefing in this matter is concluded." However, as of this order's filing the docket does not reflect service to Defendants Hernandez and Todd. "If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Well over 90 days have passed since Plaintiff filed the FAC and SAC.

Within 14 days, Plaintiff shall show cause why the unserved Defendants should not be dismissed without prejudice by either filing proofs of service or a brief of no more than 5 pages showing good cause for an extension of time to serve them. If Plaintiff files such a brief, Defendants Waller and Munoz may respond within 7 days of such filing in a brief of no more than 5 pages.

## CONCLUSION

For the reasons stated above, IT IS ORDERED THAT Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourteenth Amendment claim survives only as to damages and only against Defendants Munoz and Waller in their personal capacity. Plaintiff's battery claim against Defendants Munoz and Waller also survives.

Plaintiff's Fourth Amendment and conspiracy claims against Defendants Munoz and Waller are DISMISSED WITH PREJUDICE. All of Plaintiff's claims against Defendants Department of Public Safety/NMSP, Gomez, LaFave, Tenorio, Willis, and Aguirre are DISMISSED WITH PREJUDICE.[4]

Carrillo-Ortiz's claims against the unserved Defendants Hernandez and Todd remain pending but **Plaintiff must show cause within 14 days** why those claims should not be dismissed without prejudice for failure to serve. If Plaintiff files a brief to show good cause for an extension of time to serve Hernandez and Todd, Defendants Waller and Munoz may respond **within 7 days** of such filing.

The stay of proceedings entered by order of August 7, 2018 is terminated. **Defendants Waller and Munoz shall file their answer within 14 days.** The Court will set a pretrial conference in due course to set a new schedule.

Dated this 13th day of September, 2019.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE

---

[4] The Court has twice given Plaintiff leave to amend his complaint to replead the dismissed claims. Plaintiff is represented by counsel. The Court finds allowing further amendment would be futile and therefore dismisses these claims with prejudice.